EILEEN R. RIDLEY, CA Bar No. 151735
   eridley@foley.com
EMMA E. SOLDON, CA Bar No. 345323 (Admission Pending),
   esoldon@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

Attorneys for Plaintiff FBC MORTGAGE, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FBC MORTGAGE, LLC, a Florida corporation,<br><br>           Plaintiff,<br><br>vs.<br><br>NEW AMERICA FUNDING, LLC,  a California corporation; BRIAN SKARG, an individual; AMANDA BENSON, an individual; RYAN GEE, an individual; JOSHUA SAVEA, an individual; and DOES 1 through 20,<br><br>           Defendants. | Case No.<br><br>**PLAINTIFF FBC MORTGAGE, LLC'S COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP, BREACH OF FIDUCIARY DUTY, AIDING AND ABETTING BREACH OF FIDUCIARY DUTY, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030, VIOLATION OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, CALIFORNIA PENAL CODE § 502, VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ., VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, CALIFORNIA CIVIL CODE § 3426, ET SEQ., AND VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.**<br><br>JURY TRIAL DEMANDED |

Plaintiff FBC Mortgage, LLC ("FBC" or "Plaintiff") makes the following allegations against Defendants New American Funding, LLC ("New American"), Brian Skarg ("Skarg"), Amanda Benson ("Benson"), Ryan Gee ("Gee"), and Joshua Savea ("Savea") (collectively, "Defendants" or, as to the last four, the "Employees"):

<u>**PARTIES**</u>

1.      Plaintiff is a domestic corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 189 South Orange Avenue, Suite 970 Orlando, FL 32801.

2.      Defendant New American is a domestic corporation organized and existing under the laws of the State of California, with its principal place of business located at 14511 Myford Road, Suite 100 Tustin, CA 92780.

3.      Defendant Skarg is an individual who is a resident of Rocklin, California and was formerly employed as a Mortgage Loan Originator for FBC.

4.      Defendant Benson is an individual who is a resident of El Dorado Hills, California and was formerly employed as a Mortgage Loan Originator for FBC.

5.      Defendant Gee is an individual who is a resident of Rocklin, California and was formerly employed as a Mortgage Loan Originator for FBC.

6.      Defendant Savea is an individual who is a resident of Roseville, California and was formerly employed as a Mortgage Loan Originator for FBC.

7.      Plaintiff is ignorant of the true names and capacities of potential additional defendants but believes additional parties may be discovered during this action.  On information and belief, Plaintiff alleges that these unnamed defendants are responsible in some manner as alleged herein or are otherwise responsible for, participated in, or contributed to the matters of which Plaintiff complains, and have legal responsibility as a result.  Plaintiff will amend this Complaint to add such defendants as parties to the action upon learning of their identity and the relevant facts associated with their potential liability.

<u>**JURISDICTION AND VENUE**</u>

8.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action alleges violations of federal statutes, including the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the

Defend Trade Secrets Act, 18 U.S.C. § 1836. The Court has supplemental jurisdiction over the remaining claims under 29 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Defendants because Defendants are "at home" in the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117 (2014). The Employees are domiciled in California, and New American has its principal place of business and is incorporated in California. Additionally, New American directs business activities toward and conducts business with consumers within California, including marketing and providing mortgage loans within California to consumers who reside in California. Furthermore, among other acts, Defendants unlawfully accessed and used Plaintiff's computers, data, servers, confidential information, proprietary information, and/or trade secrets in California in order to make unauthorized copies of those items and to gain an unfair business advantage by using those items.

10.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this District. Among other acts, Defendants unlawfully accessed, used, and copied Plaintiff's computers, data, servers, networks, confidential information, proprietary information, and/or trade secrets in this District.

11.    Jurisdiction and venue are also proper in this Court under California Penal Code § 520(j), which states: "For purposes of bringing a civil or criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, computer network in each jurisdiction."

## BACKGROUND FACTS

12.    On July 25, 2019, Plaintiff and Skarg entered into an Employment Agreement. The Employment Agreement is a valid, enforceable, and binding written contract, a copy of which is attached hereto as Exhibit A, and which is made a part hereof and incorporated herein by reference.

13.    On October 29, 2019, Plaintiff and Benson entered into an Employment Agreement. The Employment Agreement is a valid, enforceable, and binding written contract, a copy of which is attached hereto as Exhibit B, and which is made a part hereof and incorporated herein by reference.

14.     On May 5, 2022, Plaintiff and Gee entered into an Employment Agreement.   The Employment Agreement is a valid, enforceable, and binding written contract, a copy of which is attached hereto as Exhibit C, and which is made a part hereof and incorporated herein by reference.

15.     On July 27, 2020, Plaintiff and Savea entered into an Employment Agreement.   The Employment Agreement is a valid, enforceable, and binding written contract, a copy of which is attached hereto as Exhibit D, and which is made a part hereof and incorporated herein by reference.

16.     By virtue of their positions at Plaintiff, the Employees were entrusted with volumes of confidential, proprietary, and trade secret information, including non-public personal information of clients, applicants, and borrowers. This information is protected by federal and state laws and regulations, may not be disclosed to third-parties, and may only be used for narrowly-prescribed purposes.   This information includes without limitation current and potential client lists; client names, addresses, personally-identifying information, and financial information; pricing and rate information; training and marketing materials; job aids; and supplier, vendor, and referral sources.

17.     Plaintiff protects to the fullest extent its confidential, proprietary, and trade secret information, including and especially its non-public and personally-identifying client information. Customer privacy and the non-disclosure of confidential client information are vitally important to Plaintiff's business, and Plaintiff would be seriously harmed by a breach of privacy or unauthorized disclosure of client information.   Plaintiff has implemented security controls to safeguard its trade secrets and client information, including, among other things, password protection, dual authentication, and where appropriate, encryption.

18.     Pursuant to their respective Employment Agreements, the Employees expressly agreed that the Employees would have access to Plaintiff's confidential information, trade secrets, and proprietary information, and that such information would remain the trade secrets and property of Plaintiff.   The Employees agreed that they would not, at any time during or after their employment, "disclose or use in any way whatsoever any of such confidential information."   Further, the Employees specifically covenanted and agreed "not to make any duplicates, copies, or reconstructions of such materials, and that if any such duplicates, copies, or reconstructions are made, they shall become the property of FBC upon their creation."

19.     Pursuant to their respective Employment Agreements, the Employees expressly agreed that during the period of employment and for one year thereafter, they would not solicit for employment or employ any employee of Plaintiff or any person who was an employee of Plaintiff within 12 months prior to such solicitation of employment.  Further, the Employees agreed not to induce, or attempt to induce, any employee of Plaintiff to terminate employment with Plaintiff.

20.     Pursuant to their respective Employment Agreements, the Employees expressly agreed not to induce, or attempt to induce, anyone having a business relationship with Plaintiff to terminate or curtail such relationship or compete with Plaintiff.

21.     Pursuant to their respective Employment Agreements, the Employees expressly agreed not to knowingly make any untrue statement concerning Plaintiff, Plaintiff's directors, or Plaintiff's employees.

22.     On or about November 2022, the Employees terminated their employment with Plaintiff and began working for New American.

23.     Before terminating employment with Plaintiff, the Employees took Plaintiff's proprietary and confidential information, including without limitation its current and potential client lists, rate information, marketing materials, training materials, job aids, application materials, and information regarding personnel, clients, suppliers, vendors, and referral sources.

24.     After joining New American, the Employees breached their Employment Agreements by collectively orchestrating a mass departure of Plaintiff's personnel by soliciting an entire branch of employees to terminate employment with Plaintiff.  On information and belief, this solicitation occurred at least in part through indirect means, using New American's recruiting and human resources departments.

25.     In violation of his Employment Agreement, Skarg sent Plaintiff's confidential and proprietary documents and information to his personal email on several occasions between October 25, 2022 and November 11, 2022.

26.     On information and belief, around the time that the Employees terminated their employment with Plaintiff, the Employees disparaged Plaintiff's good business reputation to Plaintiff's

current and potential clients. On information and belief, the Employees continue to disparage Plaintiff's good business reputation to Plaintiff's current and potential clients to this day.

27. On information and belief, New American accessed and used Plaintiff's documents, proprietary and confidential information, and/or trade secrets to begin servicing Plaintiff's clients.

28. Prior to the filing of this action, Plaintiff formally notified the Employees of their breaches of their Employment Agreements and their violations of law. Plaintiff also formally notified New American of its aiding and abetting the Employees in their breaches, its interference with Plaintiff's contractual relationships with the Employees, and its violations of law. The Employees have failed to cure their breaches and violations of the law, and New American has failed to cure its violations of the law, resulting in damages to Plaintiff.

29. To this day, Plaintiff continues to suffer damages, as well as irreparable harm and incalculable injury, as a direct and proximate result of Defendants' conduct. Plaintiff has no adequate remedy at law.

## COUNT ONE

### BREACH OF CONTRACT

### Against Defendants Skarg, Benson, Gee, and Savea

30. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

31. As stated above, Plaintiff entered into Employment Agreements with Skarg, Benson, Gee, and Savea, respectively. Each of these agreements is a valid, binding, enforceable written employment contract that is supported by consideration on both sides.

32. Plaintiff fully performed its obligations under each of the Employment Agreements, and all conditions precedent to each Employment Agreement have been satisfied.

33. The Employees were contractually obligated under their respective Employment Agreements to not "disclose or use in any way whatsoever" Plaintiff's confidential information, trade secrets, and proprietary information, at any time during or after their employment with Plaintiff. The Employees expressly agreed to not solicit for employment or employ any employee of Plaintiff or any person who was an employee of Plaintiff within 12 months prior to such solicitation of employment, and

to not induce, or attempt to induce, any employee of Plaintiff to terminate employment with Plaintiff. Further, the Employees were contractually obligated to not induce, or attempt to induce, anyone having a business relationship with Plaintiff to terminate or curtail such relationship or compete with Plaintiff, and to not knowingly make any untrue statement concerning Plaintiff, Plaintiff's directors, or Plaintiff's employees.

34.     On information and belief, all of the Employees breached their respective Employment Agreements by bringing to their new place of employment at New American Plaintiff's proprietary documents and information, confidential information, and trade secrets, including without limitation its current and potential client lists, rate information, proprietary marketing materials, application materials, personnel information, and client information.

35.     The Employees breached their respective Employment Agreements by soliciting an entire branch of employees to terminate employment with Plaintiff.  On information and belief, this solicitation occurred at least in part through indirect means, using New American's recruiting and human resources departments.

36.     The Employees breached their respective Employment Agreements by disparaging Plaintiff's good business reputation to Plaintiff's current and potential clients and, in the process of doing so, on information and belief, by knowingly making an untrue statement concerning Plaintiff and/or Plaintiff's directors and employees.  This was a deliberate attempt by the Employees to induce Plaintiff's current and potential clients to terminate or curtail their business relationships with Plaintiff.

37.     In violation of their respective Employment Agreements, and numerous state and federal privacy laws of which the Employees were aware as licensed loan originators, the Employees used Plaintiff's proprietary client information, good will, and relationships to poach Plaintiff's current and potential clients and begin servicing those clients at their new place of employment, New American.

38.     For example, as a Mortgage Loan Originator for FBC, Savea opened a file for client G.T. on October 7, 2022.  On December 14, 2022, shortly after Savea terminated employment with FBC to begin working for New American, New American pulled G.T.'s credit.  This indicates that Savea used Plaintiff's client information, good will, and relationship with client G.T. in order to bring G.T.'s loan with him from FBC to New American.

39.     On information and belief, Benson engaged in the same process of using Plaintiff's client information, good will, and relationship to bring loans for clients J.T.S., N.M.D., and R.F.M with her to New American.

40.     On information and belief, Gee engaged in the same process of using Plaintiff's client information, good will, and relationship to bring loans for clients J.L. and K.C. with him to New American.

41.     Skarg breached his Employment Agreement by sending to his personal email Plaintiff's proprietary documents and information, confidential information, and trade secrets, including without limitation its current and potential client lists, rate information, proprietary marketing materials, application materials, personnel information, and client information.  On information and belief, Skarg used this proprietary, confidential, and trade secret information to begin servicing Plaintiff's current and former clients at his new place of employment, New American.

42.     In sum, the Employees transferred highly confidential and valuable information to New American, where the Employees and New American later used it to generate significant revenues and profits.  New American knew that the Employees brought with them valuable, protected information that could and would be directly leveraged upon joining New American.

43.     Plaintiff notified Skarg and New American of such breaches and provided an appropriate time to cure them.

44.     The Employees' conduct includes intentional breaches of their respective Employment Agreements, as described herein. These breaches have resulted in damages to Plaintiff, and continue to damage Plaintiff, in an amount that exceeds the jurisdictional minimum of this Court and that will be proven at trial.

45.     The Employees' conduct has caused and continues to cause immediate, irreparable, and incalculable harm and injury to Plaintiff, including, among other things: destroying Plaintiff's goodwill and reputation with its client and referral sources, interfering with Plaintiff's contractual and commercial relationships, disrupting the continuity of Plaintiff's workforce, and threatening the continued use, disclosure, and misappropriation of Plaintiff's confidential, proprietary, and trade secret information. Plaintiff has no adequate remedy at law.

**COUNT TWO**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS**

**Against Defendant New American**

46. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

47. New American had knowledge of the Employment Agreements between Plaintiff and the Employees. On information and belief, New American was aware that the Employees terminated their employment with Plaintiff in order to begin employment with New American.

48. New American aided and abetted the Employees in breaching their respective Employment Agreements with Plaintiff. On information and belief, New American accepted, accessed, used, and/or allowed its employees or persons under its control to access and/or use Plaintiff's proprietary, confidential and trade secret information, which the Employees took from Plaintiff before terminating their employment with Plaintiff and accepting employment at New American. As stated above, Plaintiff's proprietary, confidential and trade secret information include without limitation Plaintiff's current and potential client lists, rate information, proprietary marketing materials, application materials, personnel information, and client information.

49. On information and belief, New American used its recruiting and human resources departments to aid the Employees in breaching their respective Employment Agreements by soliciting an entire branch of employees to terminate employment with Plaintiff.

50. On information and belief, New American aided the Employees in breaching their respective Employment Agreements by disparaging Plaintiff's good business reputation to Plaintiff's current and potential clients, in order to give New American an unfair business advantage and allow New American to begin servicing Plaintiff's current and potential clients.

51. On December 13, 2022, Plaintiff formally notified New American of the Employees' breaches and violations of law and that New American's use of or access to any of Plaintiff's documents, proprietary and confidential information, or trade secrets constituted aiding and abetting the Employees in their breach of their respective Employment Agreements and as interfering with the Employees' contractual relationships with Plaintiff. New American knew that the interference with the contractual

relationships between Plaintiff and Skarg, Benson, Gee, and Savea, respectively, was certain or substantially certain to occur as a result of New American's wrongful conduct because New American knew that (a) the Employees were terminating their employment with Plaintiff in order to accept employment with New American, (b) the Employees were bringing with them Plaintiff's proprietary documents and information, confidential information, and trade secrets, and (c) the Employees, other New American employees, or other persons under New American's control were disparaging Plaintiff's good business reputation to Plaintiff's current and potential clients in order to give New American an unfair business advantage and allow New American to begin servicing Plaintiff's current and potential clients.

52.    New American's interference was a substantial factor in causing Plaintiff to suffer economic harm.  New American hired the Employees knowing that they previously worked for Plaintiff and allowed the Employees to bring with them Plaintiff's proprietary, confidential, and trade secret information, in breach of the Employees' respective Employment Agreements and in violation of federal and state law.  On information and belief, New American helped the Employees solicit Plaintiff's former employees using its recruiting and human resources departments, in violation of the Employees' respective Employment Agreements.  New American's actions directly enabled, aided, and abetted the Employees' breaches of contract and violations of law, resulting in damages to Plaintiff in an amount that exceeds the jurisdictional minimum of this Court and that will be proven at trial.

53.    New American's conduct constitutes intentional interference with contractual relationships, which has caused actual damage to Plaintiff in an amount to be proven at trial.

54.    New American's actions have caused and continue to cause irreparable and incalculable harm and injury to Plaintiff, including destroying Plaintiff's goodwill and reputation with its client and referral sources, interfering with Plaintiff's contractual and commercial relationships, disrupting the continuity of Plaintiff's workforce, and threatening the continued use, disclosure, and misappropriation of Plaintiff's confidential, proprietary, and trade secret information.  Plaintiff has no adequate remedy at law.

## COUNT THREE

### BREACH OF FIDUCIARY DUTY

**Against Defendants Skarg, Benson, Gee, and Savea**

55.     Plaintiff realleges and incorporates by reference, as set forth herein, the allegations in all preceding paragraphs.

56.     As employees of Plaintiff, Defendants Skarg, Benson, Gee, and Savea owed fiduciary duties to Plaintiff, including the duties of loyalty and good faith.  The Employees were placed in a position of trust and confidence, where they had access to confidential employee, customer, and business information.  This gave rise to the fiduciary duties of loyalty and good faith, requiring the Employees to act solely for the benefit of Plaintiff, and not contrary to Plaintiff's interests, and to act honestly, fairly, and in good faith when dealing with Plaintiff.

57.     During their employment with Plaintiff, the Employees breached their fiduciary duties of loyalty and good faith to Plaintiff by knowingly and intentionally acting adversely to Plaintiff's interests and taking unfair advantage of Plaintiff by: (a) using Plaintiff's confidential, proprietary, and trade secret information for the benefit of New American; (b) using Plaintiff's confidential information learned during employment to solicit an entire branch of Plaintiff's employees to terminate employment with Plaintiff and join New American; (c) diverting clients and other business opportunities to New American; and/or (d) disparaging Plaintiff's good business reputation to Plaintiff's current and potential clients.

58.     As a direct and proximate result of the Employees' actions, Plaintiff has suffered damages in an amount to be proven at trial.  These damages include loss of key employees, clients, and other business relationships; loss of confidential information; and loss of key employees.  Plaintiff's damages also include the Employees' compensation after their loyalty transferred to New American but before they resigned from Plaintiff, the costs of investigating and seeking to halt the damage to Plaintiff's business, the increased costs of maintaining certain loans in Plaintiff's pipeline, and the loss of potential business as a result of disruptions caused by the Employees' shifting loyalty.

59.     On information and belief, the Employees' conduct was intentional, willful, outrageous, malicious, and fraudulent, entitling Plaintiff to punitive damages.

60.     The Employees' conduct has caused and continues to cause immediate, irreparable, and incalculable harm and injury to Plaintiff, including, among other things: destroying Plaintiff's goodwill and reputation with its client and referral sources, interfering with Plaintiff's contractual and commercial relationships, disrupting the continuity of Plaintiff's workforce, and threatening the continued use, disclosure, and misappropriation of Plaintiff's confidential, proprietary, and trade secret information. Plaintiff has no adequate remedy at law.

## COUNT FOUR

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

#### Against Defendant New American

61.     Plaintiff realleges and incorporates by reference, as set forth herein, the allegations in all preceding paragraphs.

62.     New American had knowledge of the Employment Agreements between Plaintiff and the Employees.  On information and belief, New American was aware that the Employees terminated their employment with Plaintiff in order to begin employment with New American.

63.     New American aided and abetted the Employees in breaching their duties of loyalty and good faith to Plaintiff.   On December 13, 2022, Plaintiff formally notified New American that the Employees were breaching their respective Employment Agreements with Plaintiff and violating federal and state law.  After receiving such notice, New American knowingly allowed the Employees to continue (a) accessing Plaintiff's proprietary, confidential, and trade secret information for the benefit of New American; (b) diverting client and other business relationships from Plaintiff to New American; and (c) soliciting Plaintiff's employees to terminate employment with Plaintiff and join New American.  New American willfully enabled the Employees to engage in this conduct, knowing that it violated the Employees' duties of loyalty and good faith to Plaintiff.

64.     New American's conduct constitutes aiding and abetting the Employees' breaches of fiduciary duty.

65.     As a direct and proximate result of the New American's aiding and abetting of the Employees' breaches of fiduciary duties, Plaintiff has suffered damages in an amount to be proven at trial.

66.     New American's conduct has caused and continues to cause immediate, irreparable, and incalculable harm and injury to Plaintiff, including, among other things: destroying Plaintiff's goodwill and reputation with its client and referral sources, interfering with Plaintiff's contractual and commercial relationships, disrupting the continuity of Plaintiff's workforce, and threatening the continued use, disclosure, and misappropriation of Plaintiff's confidential, proprietary, and trade secret information.

## COUNT FIVE

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### Against All Defendants

67.     Plaintiff realleges and incorporates by reference, as set forth herein, the allegations in all preceding paragraphs.

68.     Plaintiff has an had protectable business relationships with all of its employees that left Plaintiff for New American, as well as the clients that the Defendants solicited, induced, attempted to solicit, or attempted to induce to leave Plaintiff the (the "Protectable Business Relationships").

69.     Plaintiff had a reasonable expectation that: (a) its employees would continue their employment with Plaintiff; and (b) its clients would continue doing business with Plaintiff and using Plaintiff's services.

70.     Absent improper interference, Plaintiff would have had greater prospective business advantage with the Protectable Business Relationships.

71.     At all relevant times, Defendants had knowledge of the Protectable Business Relationships.

72.     As explained above, Defendants permitted and/or encouraged Plaintiff's employees to terminate their employment relationships with Plaintiff, in violation of their contractual and fiduciary duties to Plaintiff, and have thereby interfered with Plaintiff's prospective business advantage.

73.     As explained above, Defendants improperly obtained Plaintiff's current and prospective client information and encouraged Plaintiff's current and prospective clients to terminate their business relationships with Plaintiff so that New American could begin servicing Plaintiff's current and prospective clients.

74.     Defendants succeeded in terminating Plaintiffs' relationship with its employees and clients and in interfering with Plaintiff's expectancy in those Prospective Business Relationships, causing damage to Plaintiff.

75.     Defendants' actions, described herein, were done purposefully, with malicious and unjustifiable intent, through improper means and with an improper purpose.

76.     As a direct and proximate result of Defendants' conduct, Plaintiff has incurred and will continue to incur actual damages, in an amount to be proven at trial, including without limitation lost business, lost profits, and the costs of investigating and seeking to halt Defendants' wrongful conduct.

77.     Defendants' conduct has caused and continues to cause immediate, irreparable, and incalculable harm and injury to Plaintiff, including, among other things: destroying Plaintiff's goodwill and reputation with its client and referral sources, interfering with Plaintiff's contractual and commercial relationships, disrupting the continuity of Plaintiff's workforce, and threatening the continued use, disclosure, and misappropriation of Plaintiff's confidential, proprietary, and trade secret information. Plaintiff has no adequate remedy at law.

78.     Plaintiff is entitled to temporary and permanent injunctive relief, compensatory damages, punitive and exemplary damages, disgorgement of unjust enrichment, attorneys' fees, costs, and other equitable relief.

## COUNT SIX

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### Against All Defendants

79.     Plaintiff realleges and incorporates by reference, as set forth herein, the allegations in all preceding paragraphs.

80.     Plaintiff has an had protectable business relationships with all of its employees that left Plaintiff for New American, as well as the clients that the Defendants solicited, induced, attempted to solicit, or attempted to induce to leave Plaintiff the (the "Protectable Business Relationships").

81.     Plaintiff had a reasonable expectation that: (a) its employees would continue their employment with Plaintiff; and (b) its clients would continue doing business with Plaintiff and using Plaintiff's services.

82.     Absent improper interference, Plaintiff would have had greater prospective business advantage with the Protectable Business Relationships.

83.     At all relevant times, Defendants had knowledge of the Protectable Business Relationships, and Defendants knew or should have known that their conduct would cause Plaintiff to lose the benefit of those Protectable Business Relationships.

84.     As explained above, Defendants permitted and/or encouraged Plaintiff's employees to terminate their employment relationships with Plaintiff, in violation of their contractual and fiduciary duties to Plaintiff, and have thereby interfered with Plaintiff's prospective business advantage.

85.     As explained above, Defendants improperly obtained Plaintiff's current and prospective client information and encouraged Plaintiff's current and prospective clients to terminate their business relationships with Plaintiff so that New American could begin servicing Plaintiff's current and prospective clients.

86.     Defendants succeeded in terminating Plaintiffs' relationship with its employees and clients and in interfering with Plaintiff's expectancy in those Prospective Business Relationships, causing damage to Plaintiff.

87.     As a direct and proximate result of Defendants' conduct, Plaintiff has incurred and will continue to incur actual damages, in an amount to be proven at trial, including without limitation lost business, lost profits, and the costs of investigating and seeking to halt Defendants' wrongful conduct.

88.     Defendants' conduct has caused and continues to cause immediate, irreparable, and incalculable harm and injury to Plaintiff, including, among other things: destroying Plaintiff's goodwill and reputation with its client and referral sources, interfering with Plaintiff's contractual and commercial relationships, disrupting the continuity of Plaintiff's workforce, and threatening the continued use, disclosure, and misappropriation of Plaintiff's confidential, proprietary, and trade secret information. Plaintiff has no adequate remedy at law.

89.     Plaintiff is entitled to temporary and permanent injunctive relief, compensatory damages, punitive and exemplary damages, disgorgement of unjust enrichment, attorneys' fees, costs, and other equitable relief.

**COUNT SEVEN**

**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**

**Against Defendants Skarg, Benson, Gee, and Savea**

90.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-29.

91.     Plaintiff's computers, networks, drives, databases, email servers, cloud-based email accounts, and software platforms (the "Computer Systems") are connected to the internet.  Therefore, they are involved in interstate and foreign commerce and communication and are "protected computers" as defined under 18 U.S.C. § 1030(e)(2).

92.     The Employees knowingly and intentionally accessed Plaintiff's Computer Systems without authorization or in excess of authorization by Plaintiff.

93.     After gaining unauthorized access to Plaintiff's Computer Systems, the Employees accessed and obtained valuable information from Plaintiff's Computer Systems by downloading and otherwise copying Plaintiff's information.  The information included Plaintiff's confidential and proprietary materials and trade secrets, in the form of personnel information, financial information, market information, sales information, and similar data.

94.     Subsequently, the Employees and New American used this information to poach and service Plaintiff's clients.

95.     By taking these wrongful actions, the Employees knowingly, willfully, and with an intent to defraud accessed Plaintiff's Computer Systems without authorization or in excess of authorization and obtained valuable information from Plaintiff's Computer Systems that, on information and belief, the Employees used to obtain something of value, including without limitation the ability to service Plaintiff's current and former clients at the Employees' new place of employment, New American.

96.     The Employees' unlawful and unauthorized access and other wrongful conduct continues to this day.

97.     The Employees' conduct was for the purposes of private financial gain and securing an unfair business advantage, and the Employees' conduct has caused a loss to Plaintiff during a one-year period in excess of $75,000.  These losses will increase as time goes on.

98.     Plaintiff has been and continues to be damaged by the Employees' actions, including by being forced to expend resources to investigate and try to halt the unauthorized use, access, alteration, copying, downloading, destroying, and/or abuse of its Computer Systems.  Plaintiff seeks compensatory and other equitable relief under 18 U.S.C. § 1030(g) in an amount to be proven at trial.

99.     Plaintiff has suffered irreparable and incalculable harm and injuries resulting from the Employees' conduct, including destroying Plaintiff's goodwill and reputation with its client and referral sources, interfering with Plaintiff's contractual and commercial relationships, disrupting the continuity of Plaintiff's workforce, and threatening the continued use, disclosure, and misappropriation of Plaintiff's confidential, proprietary, and trade secret information.  The harm will continue unless the Employees are enjoined from further unauthorized use of, copying, access, alteration or destruction of Plaintiff's protected Computer Systems.  Plaintiff has no adequate remedy at law.

## COUNT EIGHT

### VIOLATION OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, CALIFORNIA PENAL CODE § 502

### Against Defendants Skarg, Benson, Gee, and Savea

100.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-29.

101.     Without permission, the Employees knowingly accessed and took, used, downloaded, copied, transmitted, altered, and/or destroyed (and continue to access, use, and transmit) Plaintiff's data, computers, computer systems, networks, drives, servers, and/or databases, as part of a deliberate attempt to devise and/or execute a scheme to defraud and deceive or to wrongfully obtain data in violation of California Penal Code § 502(c)(1).  Specifically, the Employees used, accessed, obtained, copied, downloaded, and/or transmitted valuable information from Plaintiff's computer systems in a deliberate attempt to defraud Plaintiff and to wrongfully control or obtain Plaintiff's confidential and proprietary materials and trade secrets, in the form of personnel information, financial information, market information, sales information, and similar data.

102.     As explained above, the Employees knowingly accessed and without permission took, copied, transmitted, and/or made use of (and continue to access, take, copy, transmit, and/or make use of)

Plaintiff's data from Plaintiff's computer, computer systems, and computer networks, in violation of California Penal Code § 502(c)(2).

103.    The Employees knowingly and without permission used or caused to be used Plaintiff's computer services in violation of California Penal Code § 502(c)(3).   Specifically, the Employees knowingly and without permission used Plaintiff's computer services in order to obtain Plaintiff's data, as explained above.

104.    The Employees knowingly accessed and without permission altered data on Plaintiff's computers, computer systems, and computer networks in order to send Plaintiff's data to their personal emails and/or download Plaintiff's data to their personal files, as explained above, in violation of California Penal Code § 502(c)(4).

105.    As explained above, the Employees knowingly and without permission accessed and caused to be accessed Plaintiff's computers, computer systems, and computer networks, in violation of California Penal Code § 502(c)(7).

106.    The Employees' unlawful access to Plaintiff's data in violation of California Penal Code § 502 continues to this day.

107.    Plaintiff suffered and continues to suffer damage as a result of the Employees' violations of California Penal Code § 502 identified above.

108.    The Employees' conduct has caused irreparable and incalculable harm and injury to Plaintiff, including destroying Plaintiff's goodwill and reputation with its client and referral sources, interfering with Plaintiff's contractual and commercial relationships, disrupting the continuity of Plaintiff's workforce, and threatening the continued use, disclosure, and misappropriation of Plaintiff's confidential, proprietary, and trade secret information.   Unless enjoined, the Employees' conduct will cause further irreparable and incalculable injury, for which Plaintiff has no adequate remedy at law.

109.    The Employees willfully violated California Penal Code § 502 in disregard and derogation of Plaintiff's rights, and the Employees' actions as alleged above were carried out with oppression, fraud, and malice.

110.    Pursuant to California Penal Code § 502(e), Plaintiff is entitled to injunctive relief, compensatory damages, punitive and exemplary damages, attorneys' fees, costs, and other equitable relief.

## COUNT NINE

### VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, *et seq.*

### Against All Defendants

111.   Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-29.

112.   Before terminating employment with Plaintiff, the Employees used improper means to acquire Plaintiff's Trade Secrets, including without limitation Plaintiff's current and potential client lists, rate information, proprietary marketing materials, application materials, personnel information, and client information (the "Trade Secrets").   On information and belief, the improper means included misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.   *See* 18 U.S.C. § 1839(6).   Specifically, the Employees were contractually obligated under their respective Employment Agreements to not "disclose or use in any way whatsoever" Plaintiff's confidential information, trade secrets, and proprietary information, at any time during or after his employment with Plaintiff.   In violation of their contractual obligations, the Employees improperly acquired and carried away Plaintiff's Trade Secrets to their new place of employment, New American, where the Employees and New American acquired knowledge of, used, and/or disclosed the Trade Secrets.

113.   Additionally, Skarg knowingly emailed Trade Secrets from Plaintiff's email server to Skarg's personal email account.

114.   Plaintiff's Trade Secrets come under the Defend Trade Secrets Act ("DTSA") because they are related to products and services used in or intended for use in interstate or foreign commerce, Plaintiff has taken reasonable measures to keep them secret, and the Trade Secrets derive independent economic value from not being generally known to or ascertainable by the public using proper means.   *See* 18 U.S.C. §§ 1836(b)(1), 1839(3).   Plaintiff's reasonable measures to keep its Trade Secrets secret include requiring such information to be protected under the terms of each Employment Agreement, password protection, dual authentication, and encryption.

115.   On information and belief, after using improper means to acquire knowledge of Plaintiff's Trade Secrets, in the course of their new employment with New American, the Employees used and/or

disclosed Plaintiff's Trade Secrets without Plaintiff's express or implied consent, which constitutes misappropriation of trade secrets under 18 U.S.C. § 1839(5).

116.    On information and belief, New American used and/or disclosed Plaintiff's Trade Secrets without Plaintiff's express or implied consent.  In several letters sent in early December 2022, Plaintiff formally notified each Defendant that the Trade Secrets were obtained, used, and/or disclosed without authorization.  Based on these letters, at the time of New American's use and/or disclosure of the Trade Secrets, New American knew or had reason to know that the knowledge of Plaintiff's Trade Secrets was (a) derived from or through the Employees, who had used improper means to acquire the Trade Secrets; (b) acquired under circumstances giving rise to a duty to maintain the secrecy and limit the use of the Trade Secrets; or (c) derived from or through the Employees, who owed a duty to Plaintiff to maintain the secrecy and limit the use of the Trade Secrets.  On information and belief, New American has used Plaintiff's Trade Secrets in order to acquire and begin servicing Plaintiff's clients.  New American's conduct constitutes misappropriation of trade secrets under 18 U.S.C. § 1839(5).

117.    The unlawful use and/or disclosure of Plaintiff's Trade Secrets by all Defendants continues to this day.

118.    Based on their Employment Agreements, the Employees were fully aware of the confidential, proprietary, and trade secret nature of Plaintiff's Trade Secrets.  Further, Plaintiff formally notified the Employees and New American of the confidential and proprietary nature of its Trade Secrets in several letters sent in early December 2022.

119.    On information and belief, Defendants' improper access to, and subsequent use and/or disclosure of, Plaintiff's Trade Secrets was willful, deliberate, intentional, and malicious.

120.    Plaintiff has been and continues to be damaged as a direct and proximate result of the Defendants' actions, including by being forced to expend resources to investigate and try to halt the unauthorized access, use, and/or disclosure of its Trade Secrets.  Plaintiff seeks compensatory and other equitable relief under 18 U.S.C. § 1836, *et seq.* in an amount to be proven at trial.

121.    Defendants' conduct has caused, and continues to cause, irreparable and incalculable harm and injury to Plaintiff, including destroying Plaintiff's goodwill and reputation with its client and referral sources, interfering with Plaintiff's contractual and commercial relationships, disrupting the continuity of

Plaintiff's workforce, and threatening the continued use, disclosure, and misappropriation of Plaintiff's confidential, proprietary, and trade secret information. Unless enjoined, Defendants' conduct will cause further irreparable and incalculable injury. Plaintiff has no adequate remedy at law.

122.    As a direct and proximate result of Defendants' misappropriation of Plaintiff's Trade Secrets, Defendants have been unjustly enriched, including by avoiding the time, effort, research, development, and other costs that Defendants would have had to devote to developing the Trade Secrets that Defendants misappropriated.  Defendants should be required to disgorge their wrongful gains and avoided costs.

123.    Pursuant to 18 U.S.C. §§ 1836(a), (b)(3), Plaintiff is entitled to temporary and permanent injunctive relief, compensatory damages, punitive and exemplary damages, disgorgement of unjust enrichment, attorneys' fees, costs, and other equitable relief.

## COUNT TEN

### VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT, CALIFORNIA CIVIL CODE § 3426, *et seq.*

#### Against All Defendants

124.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-29.

125.    Before terminating employment with Plaintiff, the Employees used improper means to acquire Plaintiff's Trade Secrets, including without limitation Plaintiff's current and potential client lists, rate information, proprietary marketing materials, application materials, personnel information, and client information (the "Trade Secrets").   On information and belief, the improper means included misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.  *See* Cal. Civ. Code § 3426.1(a). Specifically, the Employees were contractually obligated under their respective Employment Agreements to not "disclose or use in any way whatsoever" Plaintiff's confidential information, trade secrets, and proprietary information, at any time during or after his employment with Plaintiff.  Despite these contractual obligations, the Employees took Plaintiff's Trade Secrets to their new place of employment, New American, where the Employees and New American used and/or disclosed the Trade Secrets.

126.    Additionally, Skarg knowingly emailed Trade Secrets from Plaintiff's email server to Skarg's personal email account.

127.    Plaintiff's Trade Secrets come under the California Uniform Trade Secrets Act because Plaintiff has taken reasonable measures to keep them secret, and the Trade Secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.  *See* Cal. Civ. Code § 3426.1(d).  Plaintiff's reasonable measures to keep its Trade Secrets secret include requiring such information to be protected under the terms of each Employment Agreement.

128.    On information and belief, after using improper means to acquire knowledge of Plaintiff's Trade Secrets, in the course of their new employment with New American, the Employees used and/or disclosed Plaintiff's Trade Secrets without Plaintiff's express or implied consent.  The Employees' conduct constitutes misappropriation of trade secrets under Cal. Civ. Code § 3426.1(b).

129.    On information and belief, New American used and/or disclosed Plaintiff's Trade Secrets without Plaintiff's express or implied consent.  In several letters sent in early December 2022, Plaintiff formally notified each Defendant that the Trade Secrets were obtained, used, and/or disclosed without authorization.  Based on these letters, at the time of New American's use and/or disclosure of the Trade Secrets, New American knew or had reason to know that the knowledge of Plaintiff's Trade Secrets was (a) derived from or through the Employees, who had used improper means to acquire the Trade Secrets; (b) acquired under circumstances giving rise to a duty to maintain the secrecy and limit the use of the Trade Secrets; or (c) derived from or through the Employees, who owed a duty to Plaintiff to maintain the secrecy and limit the use of the Trade Secrets.  On information and belief, New American has used Plaintiff's Trade Secrets in order to acquire and begin servicing Plaintiff's clients.  New American's conduct constitutes misappropriation of trade secrets under Cal. Civ. Code § 3426.1(b).

130.    The unlawful use and/or disclosure of Plaintiff's Trade Secrets by all Defendants continues to this day.

131.    Based on their Employment Agreements, the Employees were fully aware of the confidential, proprietary, and trade secret nature of Plaintiff's Trade Secrets.  Further, Plaintiff formally

notified the Employees and New American of the confidential and proprietary nature of its Trade Secrets in several letters sent in early December 2022.

132.    On information and belief, Defendants' improper access and subsequent use and/or disclosure of Plaintiff's Trade Secrets was willful, deliberate, intentional, and malicious.

133.    Plaintiff has been and continues to be damaged as a direct and proximate result of the Defendants' actions, including by being forced to expend resources to investigate and try to halt the unauthorized use, access, copying, downloading, transmission, and/or abuse of its Trade Secrets.  Plaintiff seeks compensatory and other equitable relief under Cal. Civ. Code § 3426, *et seq.* in an amount to be proven at trial.

134.    Defendants' conduct has caused, and continues to cause, irreparable and incalculable harm and injury to Plaintiff.  Unless enjoined, Defendants' conduct will cause further irreparable and incalculable injury.  Plaintiff has no adequate remedy at law.

135.    As a direct and proximate result of Defendants' misappropriation of Plaintiff's Trade Secrets, Defendants have been unjustly enriched, including by avoiding the time, effort, research, development, and other costs that Defendants would have had to devote to developing the Trade Secrets that Defendants misappropriated.  Defendants should be required to disgorge their wrongful gains and avoided costs.

136.    Pursuant to Cal. Civ. Code §§ 3426.2–26.4 Plaintiff is entitled to temporary and permanent injunctive relief, compensatory damages, punitive and exemplary damages, disgorgement of unjust enrichment, attorneys' fees, costs, and other equitable relief.

## COUNT ELEVEN

### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*

### Against All Defendants

137.    Plaintiff realleges and incorporates by reference, as set forth herein, the allegations in all preceding paragraphs.

138.    Defendants, as described above, have engaged in unlawful, unfair, and/or fraudulent business practices with respect to Plaintiff and received a substantial benefit as a result of these practices.

PLAINTIFF FBC MORTGAGE, LLC'S COMPLAINT
-22-          Case No._____

139.    Using unlawful, unfair, and/or fraudulent business practices, the Employees abused their position of trust and confidence to misappropriate Plaintiff's confidential and proprietary information, misappropriate Plaintiff's Trade Secrets, intentionally access Plaintiff's Computer Systems without authorization, and breach their respective Employment Agreements in accessing, without authorization, Plaintiff's Computer Systems and Trade Secrets.  The Employees' unlawful business practices violated California law, the Computer Fraud and Abuse Act, and the Defend Trade Secrets Act, as explained above. The Employees' wrongful conduct was designed to provide, and did provide, the Employees and their new employer, New American, with an unfair business advantage and allowed New American to poach and begin servicing Plaintiff's clients.

140.    Using unlawful, unfair, and/or fraudulent business practices, New American aided and abetted the Employees in breaching their respective Employment Agreements, intentionally interfered with Plaintiff's contractual relationships with the Employees, and allowed the Employees to give New American access to Plaintiff's confidential and proprietary information and Trade Secrets.  New American's unlawful business practices violated the Computer Fraud and Abuse Act and the Deceptive Trade Secrets Act, as explained above.  New American's wrongful conduct was designed to provide, and did provide, New American and the Employees with an unfair business advantage and allowed New American to poach and begin servicing Plaintiff's clients.

141.    Defendants' wrongful actions as described herein constitute unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code § 17200, *et seq.*

142.    As a direct and proximate result of Defendants' violations of California Business & Professions Code § 17200, *et seq.*, Defendants have each obtained wrongful gains at the expense of Plaintiff.  Defendants should be required to disgorge these gains.  Although the total amount subject to disgorgement is not yet known, this amount exceeds the jurisdictional minimum of this Court and will be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.    That judgment be entered in favor of Plaintiff on all claims for relief;

2.    For compensatory damages, lost profits, and restitution;

3.   For punitive and exemplary damages on all claims for relief for which such damages are authorized;

4.   For pre-judgment and post-judgment interest at the maximum rate allowable under California law;

5.   For injunctive relief requiring Defendants to refrain from using Plaintiff's trade secrets, confidential and proprietary information, and other documents, and further requiring Defendants to return these things to Plaintiff;

6.   For reasonable attorneys' fees;

7.   For costs of suit;

8.   For such further and other relief as the Court deems just and equitable.


DATED:  January 11, 2023           **FOLEY & LARDNER LLP**
                                   EILEEN R. RIDLEY



                                   /s/ Eileen R. Ridley
                                   Eileen R. Ridley
                                   Attorneys for Plaintiff
                                   FBC MORTGAGE, LLC