1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    FBC MORTGAGE, LLC,                    Case No.  23-cv-00143-CRB

9              Plaintiff,

10         v.                             **ORDER DENYING MOTION TO COMPEL ARBITRATION AND GRANTING MOTION TO STRIKE**

11   BRIAN SKARG, et al.,

12             Defendants.

Plaintiff FBC Mortgage, LLC ("FBC") brought suit based on the alleged misappropriation of its trade secrets by Defendant Broker Solutions, Inc. dba New American Funding ("NAF") and former employees Defendant Brian Skarg, Defendant Amanda Benson, Defendant Ryan Gee, and Defendant Joshua Savea (former employee defendants hereinafter referred to as "Individual Defendants" or, with NAF, "Defendants").  See FAC (dkt. 7).  Defendants now move to compel arbitration, and FBC separately moves to strike Defendants' affirmative defense pertaining to arbitration.  See Mot. to Compel (dkt. 57); Mot. to Strike (dkt. 54).  The Court finds this matter suitable for resolution without oral argument, per Civil Local Rule 7-1(b), VACATES the hearing currently set for October 27, 2023, DENIES the motion to compel arbitration, and GRANTS the motion to strike.

**I.    BACKGROUND[1]**

FBC brought suit on January 11, 2023 and filed an amended complaint a week later. See Compl. (dkt. 1); FAC.  The parties engaged "in lengthy settlement negotiations, which

---

[1] The Court outlined the allegations in the complaint in its Order Denying Motion to Dismiss (dkt. 32) and will not repeat them here.

United States District Court
Northern District of California

1    included various meet and confer efforts, the negotiation of a protective order, and

2    extensive searching and production of information in an attempt to settle the underlying

3    dispute," Ridley Decl. (dkt. 54-1) ¶ 5.  On June 16, 2023, Defendants filed a motion to

4    dismiss FBC's trade secrets claims, causes of action nine and ten.  See MTD (dkt. 19-1).

5    They also objected to FBC's evidence.  See Evidentiary Objections (dkt. 28).  FBC moved

6    for a temporary restraining order, see Pet. for TRO (dkt. 25), which Defendants opposed,

7    see Opp'n to TRO (dkt. 32).  The Court held a hearing on July 21, 2023 on the motion to

8    dismiss and the petition for a TRO, at which Defendants appeared.  See Motion Hearing

9    (dkt. 42).  The Court denied the TRO and the motion to dismiss on August 1, 2023.  See

10   Order on Motion for TRO (dkt. 44); Order on Motion to Dismiss (dkt. 43).

11         Following the Court's orders on those motions, Defendants on August 15, 2023

12   filed an Answer to the amended complaint, which did not mention arbitration.  See Answer

13   (dkt. 48).  Three days later, in the course of preparing a joint case management statement,

14   Defendants indicated for the first time that they intended to move to compel arbitration.

15   Joint CMC (dkt. 49) at 2.  On August 23, 2023, Defendants filed an amended answer,

16   asserting as the forty-ninth affirmative defense that Defendants had the right to compel

17   arbitration.  Amended Answer (dkt. 53).  FBC moved to strike that affirmative defense.

18   See Motion to Strike.  On September 20, 2023, Defendants moved to compel arbitration.

19   Mot. to Compel.

20   **II.    LEGAL STANDARD**

21         **A.    Motion to Compel Arbitration**

22         The Federal Arbitration Act (FAA) provides that contractual arbitration agreements

23   are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

24   equity for the revocation of any contract."  9 U.S.C. § 2; Rent-A-Ctr., W., Inc. v. Jackson,

25   561 U.S. 63, 67–68 (2010).  Private agreements to arbitrate under the FAA are enforced

26   according to their terms.  9 U.S.C. § 4.  Therefore, a party may petition a district court "for

27   an order directing that such arbitration proceed in the manner provided for in such

28   agreement."  Id.

United States District Court
Northern District of California

1    "[T]here is no 'strong federal policy favoring enforcement of arbitration

2    agreements.'  The federal policy is to treat arbitration agreements like other contracts."

3    Armstrong v. Michaels Stores, Inc., 59 F.4th 1011, 1014–15 (9th Cir. 2023) (citing

4    Morgan v. Sundance, Inc., 142 S.Ct. 1708 (2022)).  A party "cannot be required to submit

5    to arbitration any dispute which he has not agreed so to submit."  AT&T Techs., Inc. v.

6    Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation marks omitted).

7    Under the FAA, in assessing the enforceability of a contractual arbitration provision, a

8    district court's role is "limited to determining (1) whether a valid agreement to arbitrate

9    exists, and if it does, (2) whether the agreement encompasses the dispute at issue." Chiron

10   Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  If the answer to

11   both inquiries is affirmative, then the FAA requires the court to enforce the agreement in

12   accordance with its terms.  Id.  "[T]he party resisting arbitration bears the burden of

13   proving that the claims at issue are unsuitable for arbitration."  Green Tree Fin. Corp.- Ala.

14   v. Randolph, 531 U.S. 79, 91 (2000).

15       **B.      Motion to Strike**

16       Rule 12(f) of the Federal Rules of Civil Procedure permits a court to strike from a

17   pleading an insufficient defense.  Fed. R. Civ. P. 12(f).  "[T]he function of

18   a 12(f) motion to strike is to avoid the expenditure of time and money[, which] arise from

19   litigating spurious issues by dispensing with those issues prior to trial...."  Sidney-Vinstein

20   v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983).  "Generally, Rule 12(f) motions are

21   'disfavored' because they are 'often used as delaying tactics, and because of the limited

22   importance of pleadings in federal practice.'"  Equine Solutions, Inc., v. Buntrock, No. 07-

23   04976 (CRB), 2008 WL 111237, at *2 (N.D. Cal. Jan.9, 2008) (citing Bureerong v.

24   Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal.1996) (quotations and citations omitted)).

25   **III.   DISCUSSION**

26       This order addresses first Defendants' motion to compel arbitration and then FBC's

27   motion to strike the arbitration-related affirmative defense.

28

3

### A.     Motion to Compel Arbitration

Defendants move to compel arbitration of FBC's claims, arguing that the Individual Defendants' employment agreements "contain clear arbitration clauses requiring that <u>any claims arising out of the Employment Agreements</u> be submitted to binding arbitration." Mot. to Compel at 6.  They further argue that Plaintiff is aware of the arbitration provisions in the Employment Agreements, and that Plaintiff concedes that the Employment Agreements are "valid, enforceable, and binding."  <u>Id.</u> (quoting FAC ¶¶ 12–15).  And Defendants argue that the arbitration clauses encompass the claims alleged by FBC.  <u>Id.</u> at 11–13.  FBC opposes the motion on three main grounds: first, that NAF has no basis to compel arbitration because it has no agreement to arbitrate with FBC (its competitor); second, that the Individual Defendants have waived the right to arbitrate; and third, that even if there was no waiver, the claims are outside the scope of the arbitration provisions. <u>See</u> Opp'n to Mot. to Compel (dkt. 63).

#### 1.     NAF

FBC's first argument, that NAF has no basis to compel arbitration, is indisputable. <u>See</u> Ridley Decl. ¶ 15 ("FBC has never entered into an agreement to arbitrate any dispute with [NAF].").  It is not clear why NAF joined with the Individual Defendants in bringing the motion to compel.  Defendants do not even address this issue in their reply brief.  <u>See</u> Reply re Mot. to Compel (dkt. 64).  The only defendants who have any basis for moving to compel arbitration are the Individual Defendants, former employees of FBC.

#### 2.     Waiver

FBC's second argument, that those Individual Defendants have waived their right to compel arbitration, is also correct.

"[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right."  Hill v. Xerox Business Services, LLC, 59 F.4th 457, 468 (9th Cir. 2023).  A party takes "intentional acts inconsistent with its right to arbitrate" "when a party chooses to delay his right to compel arbitration by actively litigating his case to take

United States District Court
Northern District of California

1    advantage of being in federal court." Id. at 471 (quoting Martin v. Yasuda, 829 F.3d 1118,

2    1125 (9th Cir. 2016)). "[A] party's extended silence and delay in moving for arbitration

3    may indicate a 'conscious decision to continue to seek judicial judgment on the merits of

4    [the] arbitrable claims,' which would be inconsistent with a right to arbitrate." Martin, 829

5    F.3d at 1125 (quoting Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754, 759 (9th

6    Cir. 1988)). Courts are to "consider the totality of the parties' actions" in determining

7    whether a party acted inconsistently with its right to arbitrate. Armstrong, 59 F.4th at 1015

8    (quoting Hill, 59 F.4th at 471).

9         Here, the Individual Defendants "acknowledged having notice of the arbitration

10   clauses since at least January 11, 2023." Ridley Decl. ¶ 16, Ex. E (9/8/23 letter from

11   defense counsel stating that Complaint and FAC attached individual employment

12   agreements with arbitration clauses). The first element of waiver is therefore satisfied.

13        As to the second element, Defendants assert somehow that they "immediately

14   sought to compel arbitration as soon as they were permitted to file a responsive pleading in

15   this matter." Reply at 6–7. But that is false. FBC brought suit on January 11, 2023.

16   Nothing prevented the Individual Defendants from filing a motion to compel arbitration

17   immediately. The Individual Defendants might have reasonably held off on filing a

18   motion to compel arbitration while engaging in "lengthy settlement negotiations." See

19   Ridley Decl. ¶ 5. Even so, they could have filed a motion to compel arbitration once those

20   settlement discussions broke down. Instead, Defendants chose to file a motion to dismiss

21   central claims in this case. See MTD. They also objected to FBC's evidence. See

22   Evidentiary Objections. And they opposed FBC's petition for a TRO. See Opp'n to TRO.

23   When Defendants failed in their motion to dismiss, they filed an Answer to the Amended

24   Complaint, again not mentioning arbitration. See Answer. Although they referenced an

25   intention to move to compel arbitration in the August 18, 2023 Joint CMC statement, see

26   Joint CMC at 2, and included an affirmative defense of arbitrability in their August 23,

27   2023 amended answer, see Amended Answer, "[a] statement by a party that it has a right

28   to arbitration in pleadings . . . is not enough to defeat a claim of waiver," Hill, 59 F.4th at

471.  Defendants did not move to compel arbitration until September 20, 2023.  See Mot. to Compel.  In all, Defendants waited over eight months, and a month and a half after receiving an adverse ruling on their motion to dismiss, before they moved to compel arbitration.

The motion to dismiss is significant.  Defendants argue that "Individual Defendants have not taken advantage of judicial procedures unavailable in arbitration as the Individual Defendants' Motion to Dismiss and/or Demurrer could have been brought in arbitration." Reply re Mot. to Compel at 7.  That argument misses the point.  Yes, the Individual Defendants could have challenged the FAC in arbitration.  They did not.  They chose to proceed in this Court, and they used this Court's resources.  As the Martin court explained:

> a party that signs a binding arbitration agreement and has subsequently been sued in court has a choice: it can either seek to compel arbitration or agree to litigate in court.  It cannot choose both.  A party may not delay seeking arbitration until after the district court rules against it in whole or in part; nor may it belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum.  Allowing it to do so would result in a waste of resources for the parties and the courts and would be manifestly unfair to the opposing party.

Martin, 829 F.3d at 1128).

That the Individual Defendants here dragged their feet for only eight months and not longer is not dispositive.  See Sywula v. Teleport Mobility, Inc., No. 21-cv-01450-BAS-SBC, 2023 WL 4630620, at *7 (S.D. Cal. July 18, 2023) ("the length of delay is just one factor that gives color to the totality of Defendants' conduct . . . and whether Defendants' acts were inconsistent with their known rights").  A court in the Southern District of California recently held that a defendant had not undertaken acts inconsistent with its right to arbitrate where—though it waited eight months to move—it raised the arbitration agreement as an affirmative defense in its answer, and "engaged in other litigation procedure only insofar as it was obligated to because of other plaintiffs who are not subject to the arbitration agreement, and filed a motion to compel arbitration without seeking any other relief on the merits." Ashirwad v. Charter Commc'ns, LLC, No. 21-cv-2101-AJB-DDL, 2023 WL 3564938, at *3–4 (S.D. Cal. March 20, 2023).  Here,

United States District Court
Northern District of California

1    Defendants waited eight months <u>and</u> affirmatively "engaged in other litigation procedure"

2    to try to dismiss two of FBC's claims on the merits.

3         Defendants therefore took "intentional acts inconsistent with their right to

4    arbitrate." <u>See</u> <u>Hill</u>, 59 F.4th at 471 (quoting <u>Martin</u>, 829 F.3d at 1125); <u>see also</u>

5    <u>Armstrong</u>, 59 F.4th at 1015 ("Obviously, '[s]eeking a decision on the merits of a key

6    issue in a case indicates an intentional and strategic decision to take advantage of the

7    judicial forum.'") (quoting <u>Newirth by & through Newirth v. Aegis Senior Cmtys., LLC</u>,

8    931 F.3d 935, 944 (9th Cir. 2019)); <u>Martin</u>, 829 F.3d at 1126 (defendants waived right to

9    compel arbitration where they filed "a motion to dismiss on a key merits issue")[2]; <u>Kelly v.</u>

10    <u>Pub. Util. Dist. No. 2</u>, 552 Fed. Appx. 663, 664 (9th Cir. 2014) (intentional acts

11    inconsistent with the right of arbitration where parties "waited eleven months after the

12    lawsuit was filed to demand arbitration, actively litigating the case in district court" and

13    filing motion for preliminary injunction and motion to dismiss). The second element of

14    waiver is therefore also satisfied.

15         Accordingly, the Individual Defendants waived their right to arbitrate.

16             **3.     Scope**

17         Because the Court concludes that the Individual Defendants waived their right to

18    arbitrate, the Court need not reach FBC's third argument, that its claims are outside the

19    scope of the arbitration provisions.

20             **4.     Conclusion as to Motion to Compel**

21         Because the Court concludes that NAF never had a right to compel arbitration, and

22    that the Individual Defendants waived their right to compel arbitration, the Court DENIES

23    Defendants' motion to compel arbitration.

24       **B.     Motion to Strike**

25         In a related motion, FBC moves the Court to strike paragraph 49 of Defendants'

26

27 _____

28   [2] <u>See also</u> <u>id.</u> n.4 ("when defendants move for dismissal with prejudice on a key merits issue that would preclude relief as to one or more of plaintiffs' claims . . . they are seeking a ruling on the merits.").

1   amended answer. Mot. to Strike. That paragraph is where Defendants assert the

2   affirmative defense of "Arbitration," stating: "Plaintiff's causes of action, and each of

3   them, are subject to binding arbitration pursuant to enforceable arbitration agreements

4   between the parties." Amended Answer ¶ 49. FBC argues that this affirmative defense is

5   "insufficient" pursuant to Rule 12(f) of the Federal Rules of Civil Procedure because

6   "NAF has absolutely no basis for compelling arbitration with FBC" and "Individual

7   Defendants have waived any right to compel arbitration." Mot. to Strike at 2. Defendants

8   respond that "a motion to strike is not the proper mechanism to dismiss portions of a

9   pleading,"[3] and that FBC "fails to demonstrate that Defendants' arbitration defense is an

10  'insufficient defense' per Rule 12(f)." Opp'n to Mot. to Strike (dkt. 61) at 5–6.

11          A defense is "insufficient if 'there are no questions of fact,' 'any questions of law

12  are clear and not in dispute,' and 'under no set of circumstances could the defense

13  succeed.'" Woods v. Shaffer, No. 14-cv-1936-CW, 2018 WL 6436981, at *1 (N.D. Cal.

14  Dec. 7, 2018) (quoting SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995)).

15  Whether or not FBC would have satisfied the 12(f) standard absent the Court's ruling on

16  the motion to compel arbitration, the Court ruled herein that Defendants' efforts to compel

17  arbitration cannot succeed. Accordingly, the defense of arbitrability is insufficient. The

18  Court GRANTS the motion to strike.

19  **IV.    CONCLUSION**

20          For the foregoing reasons, the Court DENIES the motion to compel arbitration and

21  GRANTS the motion to strike.

22          **IT IS SO ORDERED.**

23          Dated: October 19, 2023          _____

24                                           CHARLES R. BREYER
                                             United States District Judge

25

26

27

28  _____
    [3] The motion does not seek to "dismiss" anything.

8