1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6                                  EUREKA DIVISION

7

8     FBC MORTGAGE, LLC,                      Case No.  23-cv-00143-CRB (RMI)

9                   Plaintiff,

10           v.                               **ORDER**

11    BRIAN SKARG, et al.,                    Re: Dkt. Nos. 112, 121, 122

12                   Defendants.

13

14          Now pending before the court are three motions filed by Plaintiff: two motions for

15    attorneys' fees, and a motion to compel (*see* dkts. 112, 121, 122). The motions have been fully

16    briefed (dkts. 114, 117, 124, 125, 126, 127), and the matters came on to be heard at oral argument

17    (dkt. 130). For the reasons stated below, Plaintiff's First Motion for Attorneys' fees (dkt. 112) is

18    granted, and Plaintiff's Second Motion to Compel and its Second Motion for Attorneys' Fees

19    (dkts. 121, 122) are denied.

20          As to Plaintiff's first Motion for Attorneys' Fees – Plaintiff has adequately narrated the

21    background (*see* Pl.'s Mot. (dkt. 112) at 7-10), and the court will only repeat those details here in

22    summary fashion. On February 16, 2024, the Parties filed their first letter brief setting forth their

23    discovery dispute through which Plaintiff sought a court order compelling Defendants to

24    supplement their initial disclosures and to produce responsive documents as to a number of

25    requests for productions ("RFP"). *See* Ltr. Br. (dkt. 88) at 2-4. The court heard the Parties'

26    arguments on February 20, 2024, and granted Plaintiff's requests to compel Defendants to produce

27    documents responsive to a number of RFPs (Nos. 1-2) and to supplement their responses to other

28    RFPs (Nos. 3-4, 12-13, 14-21, and 24-56) – Defendants were also ordered to supplement their

United States District Court
Northern District of California

initial disclosures on or before March 5, 2024. *See* Order of February 21, 2024 (dkt. 91). The Parties then filed another letter brief on March 14, 2024, wherein Plaintiff complained that Defendants' continued refusal to provide the previously-ordered discovery has forced it to seek the information through third-party subpoenas. *See* Ltr. Br. (dkt. 92) at 2-3. Following a hearing on March 19, 2024 (*see* dkt. 95), the court entered an order quashing Plaintiff's subpoenas (without prejudice) and directed Plaintiff to instead file another motion to compel. *See* Order (dkt. 94); *see also* Pl.'s Mot. (dkt. 112) at 10. Plaintiff then filed a motion to compel that also sought sanctions (dkt. 97), Defendants responded (dkt. 101), and Plaintiff filed a reply (dkt. 103). Following another hearing (dkt. 107) – on June 11, 2024, the court granted Plaintiff's motion to compel (but denied the requests for sanctions) as follows:

> As to RFPs 1-2, 26-30, and 32-34, Plaintiff's request to compel is **GRANTED**. Defendants shall produce the materials in question (*i.e.*, all of the actual underlying loan documents and communications, rather than just a summary spreadsheet) responsive to these requests within 14 days. As to RFPs 3-4 and 23, Plaintiff's request to compel is **GRANTED**. Within 14 days, Defendants shall produce all communications exchanged between or among the individual Defendants from September 1, 2022 to the present, in response to RFP 4; and (2) Defendants shall produce all communications exchanged between NAF and any Individual Defendants from September 1, 2022 to the present, in response to RFP 3 and 23, or alternatively, Defendants shall certify that they have produced all such communications in response to RFP 3 and 23. Furthermore, as to RFPs 3-4 and 23, as well as RFPs 24-25, the Parties are **ORDERED** to promptly meet and confer in order to work out a manner in which all text message discovery will be produced in its native format, such that those native format text message files will be produced without further delay. As to RFP 12, Plaintiff's request is **GRANTED** such that Defendants will produce unredacted copies to the extent they have not already been produced. Defendants shall have until close of business on Friday, June 14, 2024, to either identify their previous production of unredacted copies of this information, or to actually produce unredacted copies. As to RFP 13, Plaintiff's request is **GRANTED**, and Defendants shall have until close of business on Friday, June 14, 2024, to produce this material or to certify to Plaintiff that they have produced all responsive materials in Defendants' possession, custody, or control. Plaintiff's request for sanctions is **DENIED**; however, Defendants should be forewarned that further delays and obstruction of discovery may result in sanctions. Plaintiff's request for an adverse jury instruction regarding missing text messages and other missing evidence is **DENIED** without prejudice. In the event that Plaintiff is able to articulate some prejudice stemming from this missing information at a later time, the court will entertain a spoliation motion at that time. Lastly, Plaintiff's request to file a motion seeking attorneys' fees in connection with its efforts to

1    compel the discovery described herein is **GRANTED**.

2    *See* Order of June 11, 2024 (dkt. 106). In essence, this was the second time that the court had

3    ordered Defendants to produce this information; following which, Plaintiff filed the first of its two

4    pending motions for attorneys' fees (Dkt. 112).

5    Rule 37(a) provides that where a motion to compel is granted, attorneys' fees and expenses

6    must be awarded to the prevailing party unless there was no good faith effort to resolve the

7    motion, the non-disclosure was substantially justified, or other circumstances make an award of

8    expenses otherwise unjust. *See* Fed. R. Civ. P. 37(a)(5). The court finds that none of these

9    exceptions apply here. Further, as to disobeying a court order to produce discovery, Rule 37(b)

10   similarly provides that "the court must order the disobedient party, the attorney advising that

11   party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure,

12   unless the failure was substantially justified or other circumstances make an award of expenses

13   unjust." Fed. R. Civ. P. 37(b)(2)(C). Additionally, Under the Civil Local Rules for United States

14   District Court for the Northern District of California, a motion for attorneys' fees and costs must

15   include (1) the number of hours spent on the litigation by each biller, (2) detailed billing records

16   showing how much time was spent on each task, and (3) each biller's billable rate and justification

17   for such rate. Civ. L. R. 54-5(b).

18   A prevailing party is, however, only entitled to reasonable attorneys' fees; and, the

19   "starting point to determining the amount of a reasonable fee is the number of hours reasonably

20   expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S.

21   424, 433 (1983) ("This calculation provides an objective basis on which to make an initial

22   estimate of the value of a lawyer's services"). The party seeking the award must submit evidence

23   supporting the hours worked and rates claimed, and where the party fails to submit adequate

24   evidence, the amount awarded may be reduced. *Id*. The court must then adjust this lodestar amount

25   by the degree of success obtained. *Id*. at 440. In awarding reasonable attorneys' fees, the court

26   "must strike a balance between granting sufficient fees to attract qualified counsel . . . and

27   avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.

28   2008). The court must also explain the amount that is ultimately given, although "[w]here the

United States District Court
Northern District of California

3

difference between the fee request and the court's award is relatively small, a somewhat cursory explanation will suffice." *Id*. In determining the reasonableness of rates, the court may compare the requested rate with the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Id*. Furthermore, "[t]he quality of counsel and novelty and complexity of the case[]should ordinarily be reflected in the lodestar rate." *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 2011 U.S. Dist. LEXIS 138093, *20 (N.D. Cal., Dec. 1, 2011) (internal quotation marks and citation omitted).

As to compliance with Civ. L. R. 54-5(b), the court is satisfied that Plaintiff has sufficiently specified the number of hours spent on the litigation by each biller, sufficiently detailed how much time was spent on each task, and provided a sufficient a justification for each biller's hourly rate (*see* Ridley Decl. (dkt. 112-1 at 2-4, 7-18); *see also* Soldon Decl. (dkt. 112-2) at 2-5, 7-58). In this regard, Plaintiff contends that Defendants' intransigence has caused it to utilize 102.7 hours in connection with the effort to compel the discovery responses in question. *See* Ridley Decl. (dkt. 112-1) at 15. Specifically, Plaintiff provides the following breakdown: analyzing Defendants' discovery responses and productions (13.0 hours); meeting and conferring with Defendants via letter, email, and phone, including researching and analyzing applicable case law to support meet and confer letters (18.3 hours); drafting and revising two joint statements on the discovery disputes (8.8 hours); drafting and revising the Motion to Compel, including researching and analyzing applicable case law to support the Motion to Compel (37.1 hours); analyzing Defendants' Opposition to the Motion to Compel (1.8 hours); Drafting and revising the Reply in support of the Motion to Compel (16.8 hours); drafting and revising two administrative motions to seal (3.6 hours); appearing at hearings before the undersigned (2.4 hours); and analyzing the Court's orders (0.9 hours). *See id*. at 15.

Plaintiff's counsel – who work at Foley & Lardner, LLP, a large full-service law firm with a national footprint employing 1,100 attorneys across 25 offices – have billed Plaintiff at rates ranging from as little as $405 per hour for associates, to as much $975 per hour for partners. *Id*. at 16. Further, as noted above, Plaintiff's counsel have filed the required declarations (*see* dkts. 112-1, 112-2) and have justified the hourly rates charged as reasonable in light of the rates charged by

4

attorneys of a similar caliber and experience; and, based on this evidence and the case citations provided (*see* Pl.'s Mot. (dkt. 112) at 16-17), the court is satisfied that the hourly rates charged are consistent with the prevailing market rates for this type of work in the San Francisco metropolitan area. All that needs to be determined is whether the number of hours expended is reasonable. Given that Plaintiff's attorneys on this matter consist of one partner and two associates – the instant fee request is comprised of only 9.2 hours billed at the partner hourly rate (which increased from $875 in 2023, to $975 in 2024), with the balance being comprised of hours billed at the associate hourly rates (which ranged from $405 to $535). *See* Ridley Decl. (dkt. 112-1) at 4.

By way of response, Defendants' submit (1) that Plaintiff failed to meet and confer *enough* before moving to compel; (2) that Defendants' responses and non-production were substantially justified because the documents requests in question reportedly failed to specify the form in which the electronically stored information ("ESI") should be produced; and, (3) that the fee amount sought by Plaintiff is excessive in that it "seeks to recover its attorneys' fees for all the time spent on discovery," as opposed to fees related to compelling Defendants' production of the missing documents. *See* Defs.' Opp. (dkt. 114) at 6. Defendants then recite a factual background that the court sees largely as deflection – essentially, Defendants contend that Plaintiff's (repeated) requests to compel were premature, and that Plaintiff should have met and conferred with Defendants more (without describing, *how much* more, or *why*). *See id*. at 7-10. It is clear to the undersigned – both from Defendants' responsive brief (dkt. 114) and from the positions taken by Defendants at the two discovery hearings and the hearing on this motion – that Defendants were simply stonewalling in order to delay or avoid their discovery obligations.

As to Defendants' argument that Plaintiff's fee request should be apportioned because the motion to compel was only granted in part – Defendants' argument is unpersuasive because the requests to compel were <u>*all*</u> granted, all that was denied (as premature) was Plaintiff's requests for sanctions, which included a request for adverse inference instructions. *Compare* Order (dkt. 106) *with* Defs.' Mot. (dkt 114) at 11-12. Further, Defendants' suggestion (*see id*. at 12-15) that Plaintiff failed to meet and confer *sufficiently* before requesting court interventions is meritless. Defendants' insinuation that it was incumbent on Plaintiff to continue to meet and confer with

Defendants' *ad infinitum* before seeking court intervention is unreasonable. Plaintiff's extensive meet-and-confer efforts are well documented. *See* Soldon Decl. (dkt. 112-2 at 1-58). The Parties corresponded about how to produce certain text messages in detail in March of 2024 (*see id.* at 42). On March 22, 2024, when Defendants were clearly informed that certain text messages were not produced in native format (rather than via screenshot), Defendants' counsel responded that "[w]e can provide these documents to you in its native format and will supplement as such." *Id.* at 43. However, on April 4, 2024, Defendants' counsel had sent another email stating that they were not aware of any method of producing text messages in a native format. *Id.* at 42. This caused Plaintiff's counsel to respond the following day, April 5, 2024, to the effect that "[m]any documents, including text messages, are still not produced in native format. Parties routinely produce text messages in native format. As stated below, the screenshots prevent us from seeing the phone numbers and other data associated with the text messages." *Id.* at 41. Thus, when Plaintiff sought court intervention several weeks later, in May of 2024, doing so was not premature. *See* Order of June 11, 2024 (dkt. 106); *see also generally* Doti Decl. (dkt. 117-1) at 2-22.

As to Defendants' suggestion that their responses and non-production were substantially justified (*see* Defs.' Opp. (dkt. 114) at 15-19) – the undersigned finds those suggestions to be unpersuasive because, as Plaintiff points out, "Defendants offer no explanation as to how their responses and objections were substantially justified as to the withholding of any of the relevant documents responsive to RFPs 1–4, 12–13, and 23–34 [and] Defendants' failure (over the course of eight months) to produce all non-privileged documents in their possession, custody, or control in response to RFPs 1–4, 12–13, and 23–34 was far from substantially justified and indeed was a violation of the Court's prior February 21 Order." Pl.'s Reply (dkt. 117) at 9. Further, Defendants cannot avoid an attorneys' fee award by pointing out the fact that they did in fact make some document productions *after* the undersigned had granted *multiple* requests to compel that production. *See* Defs. Opp. (dkt. 114) at 10. Additionally, Defendants' suggestions that the discovery in question was produced in a *reasonably usable* format (*see id.* at 15-16) ignores the fact that, "on June 11, 2024, this Court ordered that '[w]ithin 14 days, Defendants shall produce

all communications' and ordered Defendants to produce 'all text message discovery . . . in its native format, such that those native format text message files will be produced without further delay.'" *See* Pl.'s Reply (dkt. 117) at 10 (quoting Order of June 11, 2024 (dkt. 106). Plaintiff added that (as of July 9, 2024), "[t]o date, Defendants have not produced a single text message in native format and Defendants have informed [Plaintiff] that they will not be doing so unless FBC bears the cost of production associated with the text messages." *Id*. Of course, the cost associated with this production became the subject of yet another discovery dispute (dkt. 115), and on July 23, 2024, the court ordered the Parties to split the cost associated with the native format production of the text messages in question. *See* Order (dkt. 118). But for the obstructionism of Defendants, the cost-splitting issue could have been resolved by the undersigned months earlier.

In any event, as to the reasonableness of the fee amount (both in terms of the hourly rates involved, and the number of hours spent), the court finds that both are reasonable under the circumstances, and the court rejects Defendants' argument that the fee request is related to the entirety of Plaintiff's discovery practice rather than its efforts to compel Defendants' compliance with their discovery obligations. As stated above, Plaintiff has established by competent evidence that Defendants' obstructionism caused Plaintiff to utilize 102.7 hours in connection with multiple efforts to compel the discovery responses in question. *See* Ridley Decl. (dkt. 112-1) at 15 (giving the following itemization: analyzing Defendants' discovery responses and productions such as to ferret out missing discovery (13.0 hours); meeting and conferring with Defendants regarding missing discovery via letter, email, and phone, including researching and analyzing applicable case law to support meet and confer letters (18.3 hours); drafting and revising two joint statements on the discovery disputes (8.8 hours); drafting and revising the First Motion to Compel, including researching and analyzing applicable case law to support the Motion to Compel (37.1 hours); analyzing Defendants' Opposition to the Motion to Compel (1.8 hours); Drafting and revising the Reply in support of the Motion to Compel (16.8 hours); drafting and revising two administrative motions to seal (3.6 hours); appearing at hearings before undersigned (2.4 hours); and analyzing the Court's orders (0.9 hours)). Thus, the number of hours underlying the fee request are clearly related only to Defendants' unreasonable and unjustified efforts to block discovery. Further, as

stated above, the hourly rates involved, and the number of hours expended, have been adequately justified and are reasonable. The hourly rates themselves are reasonable in light of the rates charged by attorneys of a similar caliber and experience in the San Francisco metropolitan area. Accordingly, Plaintiff's First Motion for Attorneys' Fees (dkt. 114) is **GRANTED**. Within 14 days from the date of this Order, Defendants are **ORDERED** to tender payment to Plaintiff in the amount of **$54,930.00**.

As to Plaintiff's Second Motion to Compel (dkt. 121), it was noted at the hearing on September 24, 2024, that the only matter outstanding related to that motion was Plaintiff's request to compel Defendants to produce certain email correspondence that Defendants reported having certified to the fact that no such emails exist. At the hearing, Plaintiff noted that it is impossible to believe that the emails it seeks do not exist – that is, that Defendants conducted the business affairs at the heart of this case without discussing those matters via email. While the court is not unsympathetic to Plaintiff's concern – as the court informed Plaintiff during the hearing, Plaintiff is bound by Defendants' certification that the discovery sought by Plaintiff in this regard does not exist. If, however, Plaintiff can present a concrete, non-speculative basis that might support a conclusion that the information it seeks does in fact exist and has been wrongfully withheld, or that it did exist and has been destroyed, Plaintiff can then present, as appropriate, a spoliation motion or a motion for sanctions on that basis. However, in the meantime, Plaintiff's Second Motion to Compel (dkt. 121) certain discovery, which Defendant has certified does not exist, is **DENIED**. Further, because the Second Motion to Compel (dkt. 121) has been denied, Plaintiff's Second Motion for Attorneys' Fees (dkt. 122), filed in connection therewith, is similarly **DENIED**.

**IT IS SO ORDERED.**

Dated: October 9, 2024

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California